FILED IN CHAMBERS
U.S.D.C. Atlanta

SEP 17 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JANICE AKINS and DEBRA BLOUNT,

Plaintiffs,

v.

JOHN GATES, in his individual capacity,

Defendant.

CIVIL ACTION NO.
1:00-CV-2212-JEC

### ORDER AND OPINION

This case is presently before the Court on defendant's Motion for Reconsideration [89] and defendant's Motion to Strike Plaintiffs' Supplemental Affidavits [98]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion for Reconsideration [89] should be **GRANTED** and defendants' Motion to Strike Plaintiffs' Supplemental Affidavits [98] should be **GRANTED**. Plaintiff's Motion for Extension of Time [94] is **DENIED as moot**.

### BACKGROUND

The Court has described the facts and legal precedent underlying this lawsuit in extensive detail in two previous orders. (Order on defendants' Motion for Summary Judgment [43]; Order on plaintiffs'

Motion to Reconsider [56].) Briefly, plaintiffs filed this § 1983 suit on August 25, 2000, alleging that defendant retaliated against them in violation of the First Amendment. (Order [43] at 2.) Specifically, plaintiffs claimed that defendant constructively discharged them in retaliation for reporting bid irregularities to Fulton County Commissioner Emma Darnell during a meeting on August 27, 1998. (*Id.*)

On March 28, 2003, the Court granted defendant's motion for summary judgment on grounds of qualified immunity. (*Id.* at 46.) The Eleventh Circuit reversed, in part, the Court's decision and remanded plaintiffs' First Amendment claims for trial. *Akins v. Fulton County*, 420 F.3d 1293, 1308 (11th Cir. 2005). In its decision on appeal, the Circuit Court found that plaintiffs had presented sufficient evidence to permit a reasonable jury to conclude that defendant had constructively discharged plaintiffs in retaliation for their statements to Darnell concerning bid irregularities. (*Id.* at 1302, 1305.) The Court concluded, further, that its pre-1998 case law put defendant on notice that plaintiffs' speech was protected and his actions were unlawful, and that the qualified immunity doctrine was therefore inapplicable. (*Id.* at 1306.) This Court entered the Eleventh Circuit's mandate as the judgment of the Court, and set the case for trial. (Order [82] and Notice [84].)

Following the Eleventh Circuit's decision, the Supreme Court

2

issued its decision in *Garcetti v. Ceballos,* 126 S.Ct. 1951 (2006), holding that statements made pursuant to an employee's official job duties are not "protected speech" under the First Amendment. *Garcetti,* 126 S. Ct. at 1960. Defendant contends that plaintiffs' statements to Darnell at the August 27, 1998 meeting were made pursuant to their official job duties, and therefore do not qualify as protected speech under *Garcetti*. (Def.'s Mot. for Reconsideration [89].) Accordingly, defendant has filed a motion for reconsideration of the Court's judgment (the Eleventh Circuit mandate) pursuant to Rule 54(b) and/or Rule 60(b) of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 54(b) (noting that an order "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties") and *CSX Transp., Inc. v. City of Pensacola,* 936 F.Supp. 885, 889 (N.D. Fla. 1995)("a court has the inherent power [under Rule 54(b)] to revise its orders in the interest of justice."). *See also* FED. R. CIV. P. 60(b)(providing for relief from a final judgment or order in limited circumstances) and *Lamar Adver. of Mobile, Inc. v. City of Lakeland, Florida,* 189 F.R.D. 480, 489 (M.D. Fla. 1999)(noting that a district court is justified in reconsidering a prior order under Rule 60(b) when there is an intervening change of law).

If the Court were to grant the defendant's motion for reconsideration, it would effectively be reinstating its earlier

3

grant of defendant's motion for summary judgment, albeit on a somewhat broader ground than before. See discussion *infra* at 11. As explained below, the Court grants defendant's motion and, therefore, also grants summary judgment to defendant Gates on the remaining two plaintiffs in the case.

## **DISCUSSION**

As noted, plaintiffs' First Amendment claims arise out of a meeting that plaintiffs had with Commissioner Emma Darnell on August 27, 1998. (Order [43] at 5.) Plaintiffs contend that they scheduled this meeting to discuss, among other issues, a number of bidding irregularities that they had discovered in the course of performing their duties in the purchasing department. (*Id.*) Plaintiffs allege, further, that Gates constructively discharged them in retaliation for informing Commissioner Darnell of the bidding irregularities. (*Id.* at 7-10.)

In its order addressing defendant's initial motion for summary judgment, this Court applied the *Pickering-Connick* balancing test to determine whether plaintiffs' statements to Commissioner Darnell constituted protected speech. (*Id.* at 15.) The Court noted that the threshold question under the *Pickering-Connick* test was whether plaintiffs "spoke on matters of public concern." (*Id.* at 16.) Viewing the evidence in the light most favorable to plaintiffs, the Court concluded that plaintiffs' speech pertaining to bidding

4

irregularities and violation of purchasing department rules met this requirement. (Order [43] at 19.)

The Eleventh Circuit engaged in a similar analysis. See *Akins*, 420 F.3d at 1303-04. Applying the *Pickering-Connick* test to determine whether plaintiffs' speech was protected, the Circuit Court framed the relevant inquiry as whether plaintiffs' speech "'relate[s] to a matter of political, social, or other concern to the community.'" *Id.* at 1303 (quoting *Watkins v. Bowden*, 105 F.3d 1344, 1353 (11th Cir. 1997)). Considering the evidence in the light most favorable to plaintiffs, the Court concluded that plaintiffs' speech was "of public concern."[1] *Id.* at 1304.

The *Garcetti* decision adds a layer to the first prong of the *Pickering-Connick* analysis. In *Garcetti*, the Supreme Court held that:

> [W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.

---

[1]. Although both this Court and the Eleventh Circuit had assumed that the "speech" by plaintiffs was protected by the First Amendment, we parted company on the question of qualified immunity. This Court concluded that the defendant would not have been on clear notice that the speech was so protected; the Eleventh Circuit disagreed and concluded that the law was "clearly established."

5

*Garcetti*, 126 S.Ct. at 1960).[2] To determine whether an employee's speech is protected under *Garcetti*, courts must consider not only the subject matter of an employee's speech, but also whether the employee was speaking as a citizen or as an employee fulfilling his job duties. (*Id.*) If the latter, the speech is not protected even if it relates to a topic of public concern. (*Id.*) Applying *Garcetti*, the question before the Court is whether plaintiffs were performing their job duties as purchasing department employees, or merely expressing concern as ordinary citizens, when they spoke to Commissioner Darnell on August 27, 1998.

At all times relevant to this lawsuit, plaintiff Akins served in the position of Contracting Division Chief and Assistant Purchasing Agent in the Fulton County Purchasing Department. (Akins Aff. at ¶ 2, attached to Def.'s Mot. to Reconsider [89] at Ex. A.) Akins supervised plaintiff Blount, who was a contracting officer in the purchasing department. (Blount Aff. at ¶ 2, attached to Def.'s Mot. to Reconsider [89] at Ex. B.) Both Akins and Blount testified that their official job responsibilities in the purchasing department

---

[2] The plaintiff in *Garcetti* was a deputy district attorney for the Los Angeles County District Attorney's Office. He claimed that his supervisors in the DA's Office retaliated against him after he drafted a memo discussing misrepresentations in an affidavit used to obtain a search warrant. The Ninth Circuit held that the memo constituted protected speech because it addressed governmental misconduct, which is "inherently a matter of public concern." *Ceballos v. Garcetti*, 361 F.3d 1168, 1173-74 (9th Cir. 2004).

6

included reviewing and analyzing bids for compliance with legal standards and departmental rules. (Akins Dep. at 18-24; Blount Dep. at 13-14.) Akins also testified that she and the other members of her department were responsible for preparing Board of Commissioner ("BOC") agendas and BOC fact sheets to inform the Board about bids within the department. (Akins Dep. at 21-22, 49.) Akins stated that she regularly communicated with Commissioners concerning bidding issues, that she was required to field Commissioners' questions and requests for additional information concerning individual bids, and that in some cases it was necessary for her to explain or justify the department's bidding procedures to the Board. (Id.)

Plaintiffs testified in their original affidavits that they discovered the bidding irregularities that were the subject of the August 27, 1998 meeting during the course of performing their regular job duties. (Akins Aff. at ¶¶ 4, 7-18; Blount Aff. at ¶¶ 4, 7-18.) Evidence of the irregularities appeared on the BOC fact sheets that plaintiffs prepared, and in other files that plaintiffs routinely maintained, such as purchasing bid files, active status reports, contracting officer notes, and correspondence files. (Akins Aff. at ¶¶ 7-18; Blount Aff. at ¶¶ 7-18.) Prior to meeting with Commissioner Darnell, plaintiffs discussed the irregularities with defendant and numerous other purchasing department employees. (Id.) In some cases, other commissioners were already aware of the irregularities

7

as a result of the BOC fact sheets that plaintiffs had prepared. (Akins Aff. at ¶ 8.)

Given plaintiffs' responsibilities within the purchasing department, and their regular communication with Commissioners concerning bidding issues, it is clear that plaintiffs initiated the August 27, 1998 meeting with Darnell in their capacity as employees of the purchasing department, and not as ordinary citizens. See *Garcetti*, 126 S.Ct. at 1960. Likewise, when plaintiffs informed Darnell of various bidding irregularities, which plaintiffs had previously discussed with numerous other purchasing department employees and documented in routine reports such as BOC fact sheets, plaintiffs spoke as employees fulfilling official purchasing department responsibilities. (*Id.*) Thus, plaintiffs' statements concerning bid irregularities, though related to a topic of public concern, do not constitute protected speech under *Garcetti*. *Id*. See also *Gilder-Lucas v. Elmore County Bd. of Educ.*, 186 Fed. Appx. 885, 887 (11th Cir. 2006)(finding that plaintiff's response to a questionnaire pursuant to her duty as a cheerleader sponsor, rather than as a citizen, did not constitute protected speech) and *Green v. Barrett*, 226 Fed. Appx. 883, 886 (11th Cir. 2007)("if a plaintiff speaks as part of her duties as a public employee, the speech is not protected by the First Amendment").

Plaintiffs' attempt to avoid this result by submitting

8

supplemental affidavits is unavailing. In their new affidavits, plaintiffs emphasize that they reported directly to defendant and his assistant, as opposed to individual Commissioners. (Akins Supplemental Aff. at ¶ 4; Blount Supplemental Aff. at ¶ 4, attached to Pls.' Response to Def.'s Mot. for Reconsideration [96].) They further assert, in a conclusory manner, that "no official job requirement" obliged them to inform Commissioners about bidding irregularities. (Akins Suppl. Aff. at ¶ 5; Blount Aff. at ¶ 5.)

Plaintiffs' emphasis on the formal chain of command does not comport with *Garcetti*'s directive that courts conduct a "practical inquiry" to determine the scope of an employee's duties. *Garcetti*, 126 S.Ct. at 1961. As the Supreme Court explained, "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform." *Id.* at 1962. Plaintiffs testified that they regularly communicated with Commissioners concerning bidding issues as part of their routine job duties. (Akins Dep. at 18-24; Blount Dep. at 13-14.) That plaintiffs did not strictly follow the chain of command in reporting the irregularities to Commissioner Darnell in the August 27, 1998 meeting does not change the fact that they spoke to Darnell in their capacity as employees, fulfilling their job duties within the purchasing department. *See Battle v. Bd. of Regents*, 468 F.3d 755 (11th Cir. 2006) (finding that plaintiff's reports of fraud to high ranking school officials, some

9

of which concerned her direct supervisor, were not protected because plaintiff's job required her to report fraudulent activity).

Moreover, plaintiffs have previously testified, unequivocally, that they were responsible for providing bid information to the Board of Commissioners. (Akins Dep. at 18-24; Blount Dep. at 13-14.) Akins testified in her deposition that she was tasked with the job of: (1) reviewing bids to ensure compliance with legal and ethical standards; (2) providing detailed information to the Board of Commissioners concerning each bid; and (3) in some cases explaining or justifying the bid process on a particular solicitation. (Akins Dep. at 22-23.) Blount similarly testified that her job duties required her to review bids and report to the Board of Commissioners concerning bidding issues. (Blount Dep. at 13-14.) To the extent plaintiffs' recent affidavits contradict their prior testimony, the Court **GRANTS** defendant's motion to strike the supplemental affidavits [98]. See Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984)("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony") and Huddleston v. R.J. Reynolds Tobacco Co., 66 F.Supp. 2d 1370, 1373 (N.D. Ga. 1999)(Thrash, J.)("statements in an affidavit that contradict sworn deposition

testimony cannot be used to create a genuine issue of material fact to defeat summary judgment").

Plaintiffs in this case were required to analyze purchasing department bids and report any bidding issues to their superiors, including the Board of Commissioners. Thus, when plaintiffs advised Darnell of various bid irregularities on August 27, 1998, they were simply fulfilling their job responsibilities within the purchasing department. Applying *Garcetti*, plaintiffs' statements at the August 27, 1998 meeting do not constitute protected speech. Accordingly, defendant's motion for reconsideration [89] should be **GRANTED**.

## CONCLUSION

For the foregoing reasons, defendant's Motion for Reconsideration [89] is **GRANTED** and defendant's Motion to Strike Plaintiffs' Supplemental Affidavits [98] is **GRANTED**. Plaintiff's Motion for Extension of Time [94] is **DENIED as moot**.

As noted *supra,* the consequence of this decision is the reinstatement of the Court's earlier grant of summary judgment for the defendant. As the plaintiffs were not engaged in constitutionally protected speech, any retaliation by the defendant is not actionable under § 1983. The Clerk shall close this action.

SO ORDERED, this __17__ day of September, 2007.

*/s/ Julie E. Carnes*
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)